Dolores Marie MEADOWS, Plaintiff-Appellant, Cross-Appellee,

v.

FORD MOTOR COMPANY, Defendant-Appellee, Cross-Appellant,

Local 862, International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, and International Union, United Automobile, Aerospace and Agricultural Implement Workers of America, Defendants-Appellees.

Nos. 74–1258 and 74–1259.

United States Court of Appeals, Sixth Circuit.

Jan. 24, 1975.

James C. Hickey, Ewen, MacKenzie & Peden, Louisville, Ky., Thomas L. Hogan, Louisville, Ky., for plaintiff-appellant, cross-appellee.

Arthur W. Grafton, Edgar A. Zingman, Sheryl G. Snyder, Jon L. Fleischaker, Louisville, Ky., Herbert L. Segal, Irwin H. Cutler, Jr., Louisville, Ky., for defendant-appellee, cross-appellant.

Mary-Helen Mautner, EEOC, Washington, D. C. (William A. Carey, Gen. Counsel, Joseph T. Eddins, Jr., Associate Gen. Counsel, Beatrice Rosenberg, Charles L. Reischel, EEOC, on brief) for amicus curiae.

Before EDWARDS and MILLER, Circuit Judges, and McALLISTER, Senior Circuit Judge.

EDWARDS, Circuit Judge.

Plaintiff appeals from the denial of back pay and retroactive seniority after the District Court for the Western District of Kentucky had found that she and the class of women job applicants she represents had been denied jobs, in violation of the prohibition against sex discrimination in employment contained in Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e to 2000e–15 (1970), as amended, 42 U.S.C. §§ 2000e to 2000e–17 (Supp. II, 1972). She also claims that the class involved was unduly restricted by the District Judge and that he ordered an inadequate amount of attorney fees.

This controversy arose when defendant Ford Motor Company began hiring employees for a new Ford Truck Plant in Jefferson County, near Louisville, Kentucky. Plaintiff Meadows applied for a production line job on October 10, 1969. She was not hired and heard nothing concerning her application but learned that Ford had hired over 900 men and no women. She then filed a charge of discrimination before the Equal Employment Opportunity Commission on January 14, 1970 alleging that the Ford Motor Company and Local 862, UAW[1] were discriminating against her and other women similarly situated. The EEOC issued her a notice of right to sue and plaintiff Meadows filed this action in the District Court alleging that Ford employed a 150 lb. limitation on production line hires so as to eliminate women.

The case was heard by discovery and the taking of depositions. The District Judge entered findings of fact and conclusions of law on August 29, 1973, and followed by a final judgment which recorded his critical holdings as follows:

2. There are thirty-one (31) members of the Class represented by the Plaintiff in the instant action; the names, address and telephone numbers of the said members of the class are attached hereto and made a part hereof as if fully copied herein.

3. The use by the Defendant under the circumstances before the Court of the 150 pound weight requirement for eligibility for employment on its production line at its Kentucky Truck Plant constitutes an unlawful employment practice pursuant to the terms of the Civil Rights Act of 1964, 42 U.S.C. § 2000e–1 et seq. (sic).

4. Neither the Plaintiff nor any member of the class is entitled to any award of damages. Plaintiff is awarded its costs herein expended and counsel fees in the sum of $11,500.00.

5. The Defendant, Ford Motor Company, be and hereby is permanently enjoined and prohibited from applying the 150 pound weight requirement for eligibility for employment on its production line at its Kentucky Truck Plant.

6. The names of the Plaintiff and the thirty-one (31) members of the class represented by the Plaintiff shall be placed by the Defendant in a priori-

---

1. Local 862, International Union, United Automobile, Aerospace and Agricultural Implement Workers of America.

ty employment pool in the order of the dates of their original application for production employment. The names of all other applicants for production employment are to be placed in a general pool in accordance with the present practice of Defendant. As production employment positions become available, Defendant shall select names from the two pools of applicants at a set ratio of one name from the priority pool for every three names from the general pool, and these individuals are to be notified by the Defendant of the job openings as they occur and given a reasonable opportunity to appear for a pre-employment physicial examination and the other processes regularly required of such applicants.

The District Judge defined the class of plaintiffs as those women who had applied for jobs at the Kentucky Truck Plant between April 1, 1971, and April 13, 1972, and who were refused jobs.

The District Judge also retained jurisdiction of the case to supervise implementation of his judgment.

The record showed that the two union defendants exercised no control over Ford hiring practices and the case as to them was dismissed by the District Court. No appeal was taken from this decision.

The Ford Motor Company waived its appeal from the portion of the District Judge's judgment finding it guilty of discriminatory practices and requiring it to terminate them and to establish a priority system for offering employment to some 31 identified discriminatees.

On this appeal we deal only with plaintiffs' complaints 1) that the District Judge's judgment by refusing back pay and retroactive seniority failed to make them whole and failed to deter similar discrimination in the future, 2) that the District Judge defined the class of discriminatees too narrowly, and 3) that the attorney fees awarded did not consider all of the work performed in this litigation.

## BACK PAY

The District Judge's reasoning on the back pay issue is set forth in an opinion as follows:

However, having determined that liability for discrimination exists is not the same as finding that an award of money damages is in order. Indeed, the Court has found absolutely no authority for awarding money damages in a case like the present one. Under the relevant statute, 42 U.S.C. § 2000e(5) (sic), the only money damages that can be awarded are in the form of back pay. No court whose decision has been reported has been willing to award back pay to a group of persons who were never in the employ of the employer-defendant in the first place. Back pay has been awarded in cases of discriminatory refusal to promote or to transfer, and to some individuals who were discriminatorily denied jobs in the first instance, but in all of these situations, the amount of speculation as to just who was damaged and how much has been minimal. For instance, in the case of Bowe v. Colgate, 416 F.2d 711 (C.A.7, 1969), it was quite clear as to which persons were damaged and how they should be compensated. That is not the case here. Assuming that the class of plaintiffs can be more or less exactly defined, there is no way to calculate which of them would have been hired, or when, or what other circumstances would have intervened in the meantime. In other words, there is no basis on which an award in any amount can be justified. Although all reductions of legal injury to money damages are somewhat speculative, in other cases, the damaged party is absolutely identified, which is not the case here. The fact that Ford has been found guilty of sexual discrimination does not mean that it must pay whatever damages to which the Plaintiff believes that she is entitled. Unless the Court is directed to some authority to the contrary, it does not intend to make an award of money damages in this case.

The District Judge also entered the following conclusion of law:

6. The Court, being unable to determine from the records when plaintiff or any members of her class would have been employed, had it not been for the discriminatory practices of the defendant, concludes that it is without authority to award any backpay or any monetary damages to plaintiff or any members of her class. The only cases in which backpay has been awarded to a potential employee, who was discriminated against and not employed, are those involving individual employees where it was definitely shown that they would have been entitled, on a date certain, to be employed and after computation could be made of the wages to which they were entitled. See Gates v. Georgia Pacific Corporation, 326 F.Supp. 397 (D.C.Or. 1970). Any award of damages in this case, therefore, would be speculative and must be denied.

We believe the District Judge was in error in concluding that the difficulties of ascertaining the amount of damages suffered deprived him of authority to award back pay. The statute relating to back pay is 42 U.S.C. § 2000e-5(g) (1970). The statutory language extant at the time this suit was filed was:

(g) If the court finds that the respondent has intentionally engaged in or is intentionally engaging in an unlawful employment practice charged in the complaint, the court may enjoin the respondent from engaging in such unlawful employment practice, and order such affirmative action as may be appropriate, which may include reinstatement or hiring of employees, with or without back pay (payable by the employer, employment agency, or labor organization, as the case may be, responsible for the unlawful employment practice). Interim earnings or amounts earnable with reasonable diligence by the person or persons discriminated against shall operate to reduce the back pay otherwise allowable. No order of the court shall require the admission or reinstatement of an individual as a member of a union or the hiring, reinstatement, or promotion of an individual as an employee, or the payment to him of any back pay, if such individual was refused admission, suspended, or expelled or was refused employment or advancement or was suspended or discharged for any reason other than discrimination on account of race, color, religion, sex or national origin or in violation of section 704(a). 42 U.S.C. § 2000e-5(g) (1970).

The statute was reenacted in 1972, effective for all charges then pending with the EEOC, so as to add a statute of limitations providing that, "Back pay liability shall not accrue from a date more than two years prior to the filing of a charge with the Commission." 42 U.S.C. § 2000e-5(g) (Supp. II, 1972), amending, 42 U.S.C. § 2000e-5(g) (1970).

The legislative history of this provision is also illuminating:

*Section* 706(g)—This subsection is similar to the present section 706(g) of the Act. It authorizes the court, upon a finding that the respondent has engaged in or is engaging in an unlawful employment practice, to enjoin the respondent from such unlawful conduct and order such affirmative relief as may be appropriate including, but not limited to, reinstatement or hiring, with or without back pay, as will effectuate the policies of the Act. Back pay is limited to that which accrues from a date not more than two years prior to the filing of a charge with the Commission. Interim earnings or amounts earnable with reasonable diligence by the aggrieved person(s) would operate to reduce the back pay otherwise allowable.

*The provisions of this subsection are intended to give the courts wide discretion exercising their equitable powers to fashion the most complete relief possible.* In dealing with the present section 706(g) the courts have stressed that the scope of relief under that section of the Act is intended to make the

victims of unlawful discrimination whole, and that the attainment of this objective rests not only upon the elimination of the particular unlawful employment practice complained of, but *also requires that persons aggrieved by the consequences and effects of the unlawful employment practice be, so far as possible, restored to a position where they would have been were it not for the unlawful discrimination.* 118 Cong.Rec. 7168 (1972) (Conference Report) (Emphasis added.)

We approach decision of this issue, keeping in mind the classic treatment of the damage issue by the United States Supreme Court in the *Story Parchment Co.* case:

Where the tort itself is of such a nature as to preclude the ascertainment of the amount of damages with certainty, it would be a perversion of fundamental principles of justice to deny all relief to the injured person, and thereby relieve the wrongdoer from making any amend for his acts. In such case, while the damages may not be determined by mere speculation or guess, it will be enough if the evidence show the extent of the damages as a matter of just and reasonable inference, although the result be only approximate. The wrongdoer is not entitled to complain that they cannot be measured with the exactness and precision that would be possible if the case, which he alone is responsible for making, were otherwise. Eastman Kodak Co. v. Southern Photo Co., 273 U.S. 359, 379, [47 S.Ct. 400, 71 L.Ed. 684]. Compare The Seven Brothers (D.C.), 170 F. 126, 128; Pacific Whaling Co. v. Packers' Ass'n, 138 Cal. 632, 638, 72 P. 161. As the Supreme Court

of Michigan [Gilbert v. Kennedy, 22 Mich. 117, 130 (1871)] has forcefully declared, the risk of the uncertainty should be thrown upon the wrongdoer instead of upon the injured party.

\*    \*    \*    \*    \*    \*

"To deny the injured party the right to recover any actual damages in such cases, because they are of a nature which cannot be thus certainly measured, would be to enable parties to profit by, and speculate upon, their own wrongs, encourage violence and invite depredation. Such is not, and cannot be the law, though cases may be found where courts have laid down artificial and arbitrary rules which have produced such a result." Story Parchment Co. v. Paterson Parchment Paper Co., 282 U.S. 555, 563–64, 51 S.Ct. 248, 250, 75 L.Ed. 544 (1931).

We recognize, of course, that the words were spoken in the context of tort cases. But in tort and in discrimination cases the basic objective of damages is the same—to make the injured party whole to the extent that that can be done.

We also recognize that to some extent we write on a clean slate. No case exactly in point has been cited to us and we have found none. Most of the case law in which back pay awards have been granted because of unlawful discrimination in employment practices have involved either illegal discrimination (via discharge or failure to promote) against employees who were union members or adherents[2] or against employees who were Negroes.[3]

Here, of course, we deal with a record showing discrimination against *women* in *hiring* practices. Congress, however, ap-

---

**2.** *See, e. g.,* NLRB v. Jones & Laughlin Steel Corp., 301 U.S. 1, 57 S.Ct. 615, 81 L.Ed. 893 (1937); NLRB v. Seven-Up Bottling Co., 344 U.S. 344, 73 S.Ct. 287, 97 L.Ed. 377 (1953); Radio Officers v. NLRB, 347 U.S. 17, 74 S.Ct. 323, 98 L.Ed. 455 (1953); Phelps Dodge Corp. v. NLRB, 313 U.S. 177, 61 S.Ct. 845, 85 L.Ed. 1271 (1941).

**3.** *See, e. g.,* Head v. Timken Roller Bearing Co., 486 F.2d 870 (6th Cir. 1973); Thornton v. East Texas Motor Freight, 497 F.2d 416 (6th Cir. 1974); Johnson v. Goodyear Tire & Rubber Co., 491 F.2d 1364 (5th Cir. 1974); Moody v. Albemarle Paper Co., 474 F.2d 134 (4th Cir. 1973), cert. granted, 419 U.S. 1068, 95 S.Ct. 654, 42 L.Ed.2d 664 (1974) (No. 74–389); United States v. Bethlehem Steel Corp., 446 F.2d 652 (2d Cir. 1971).

pears to have modeled the remedial features of Title VII upon the National Labor Relations Act. *See* 110 Cong.Rec. 6549 (1964) (remarks of Sen. Humphrey). *See generally* Davidson, "Back Pay" Awards Under Title VII of the Civil Rights Act of 1964, 26 Rut.L.Rev. 741 (1973); Note, Equal Employment Opportunity: The Back Pay Remedy Under Title VII, 1974 U.Ill.L.For. 379 (1974). In addition, the prohibition against sex discrimination is contained in the same sentence of Title VII as the prohibition against race discrimination. 42 U.S.C. § 2000e–2 (1970), as amended, 42 U.S.C. § 2000e–2 (Supp. II, 1972). We believe, therefore, that the great amount of case law mandating back pay awards in these two situations which we have just cited is strong precedent for our instant case.

In this regard we find the leading Supreme Court case on back pay awards occasioned by illegal union discrimination in hiring practices to be instructive:

> *Second.* Since the refusal to hire Curtis and Daugherty solely because of their affiliation with the Union was an unfair labor practice under § 8(3), the remedial authority of the Board under § 10(c) became operative. Of course it could issue, as it did, an order "to cease and desist from such unfair labor practice" in the future. Did Congress also empower the Board to order the employer to undo the wrong by offering the men discriminated against the opportunity for employment which should not have been denied them?

> Reinstatement is the conventional correction for discriminatory discharges. Experience having demonstrated that discrimination in hiring is twin to discrimination in firing, it would indeed be surprising if Congress gave a remedy for the one which it denied for the other. The powers of the Board as well as the restrictions upon it must be drawn from § 10(c), which directs the Board "to take such affirmative action, including reinstatement of employees with or without back pay, as will effectuate the policies of this

Act." It could not be seriously denied that to require discrimination in hiring or firing to be "neutralized," Labor Board v. Mackay Co., 304 U.S. 333, 348, [58 S.Ct. 904, 911, 82 L.Ed. 1381], by requiring the discrimination to cease not abstractly but in the concrete victimizing instances, is an "affirmative action" which "will effectuate the policies of this Act." Therefore, if § 10(c) had empowered the Board to "take such affirmative action as will effectuate the policies of this Act," the right to restore to a man employment which was wrongfuly denied him could hardly be doubted. Even without such a mandate from Congress this Court compelled reinstatement to enforce the legislative policy against discrimination represented by the Railway Labor Act. Texas & N. O. R. Co. v. Railway Clerks, 281 U.S. 548 [50 S.Ct. 427, 74 L.Ed. 1034]. Attainment of a great national policy through expert administration in collaboration with limited judicial review must not be confined within narrow canons for equitable relief deemed suitable by chancellors in ordinary private controversies. Compare Virginian Ry. v. Federation, 300 U.S. 515, 552, [57 S.Ct. 592, 81 L.Ed. 789.] To differentiate between discrimination in denying employment and in terminating it, would be a differentiation not only without substance but in defiance of that against which the prohibition of discrimination is directed.

> But, we are told, this is precisely the differentiation Congress has made. It has done so, the argument runs, by not directing the Board "to take such affirmative action as will effectuate the policies of this Act," *simpliciter,* but, instead, by empowering the Board "to take such affirmative action, including reinstatement of employees with or without back pay, as will effectuate the policies of this Act." To attribute such a function to the participial phrase introduced by "including" is to shrivel a versatile principle to an illus-

trative application. We find no justification whatever for attributing to Congress such a casuistic withdrawal of the authority which, but for the illustration, it clearly has given the Board. The word "including" does not lend itself to such destructive significance. Helvering v. Morgan's, Inc., 293 U.S. 121, 125, [55 S.Ct. 60, 79 L.Ed. 232] note. Phelps Dodge Corp. v. NLRB, 313 U.S. 177, 187–89, 61 S.Ct. 845, 849, 85 L.Ed. 1271 (1941).

The leading case in this circuit upon the award of back pay was written by Judge Miller in the context of a race discrimination case involving promotional opportunities:

The finding of discrimination by the district court, in addition to the nature of the relief (compensatory as opposed to punitive), and the clear intent of Congress that the grant of authority under Title VII should be broadly read and applied mandate an award of back pay unless exceptional circumstances are present.

Congress evidently intended that the award of back pay should rest within the sound discretion of the trial judge. Although appellate courts are loathe to interfere with the exercise of such discretion by a trial court, it is recognized that it is not free from appellate scrutiny. In Moody v. Albemarle Paper Co., 474 F.2d 134, 141 (4th Cir. 1973), [cert. granted, 419 U.S. 1068, 95 S.Ct. 654, 42 L.Ed.2d 664 (1974) (No. 74–389)] the Fourth Circuit said:

Discretion in a legal sense necessarily is the responsible exercise of official conscience on all the facts of a particular situation in the light of the *purpose for which the power exists.* Bowles v. Goebel, 151 F.2d 671, 674 (8th Cir. 1945) (emphasis added). Thus in determining the proper scope of the exercise of discretion, the objective sought to be accomplished by the statute must be given great weight. Hecht Co. v. Bowles, 321 U.S. 321, 331, 64 S.Ct. 587, 88 L.Ed. 754 (1944). Where a district court fails to exercise discretion

with an eye to the purposes of the Act, it must be reversed. Wirtz v. B. B. Saxon Co., 365 F.2d 457 (5th Cir. 1966); Shultz v. Parke, 413 F.2d 1364 (5th Cir. 1969).

We find no reasonable basis for denial of such relief on the present record. The 1968 change in Timken's seniority system does not ameliorate the injury already suffered. Good faith by Timken either during the 1965–68 period or thereafter is not a valid defense to a claim for back pay. The court in Rowe v. General Motors Corp., 457 F.2d 348 (5th Cir. 1972), went to great lengths to emphasize the good faith of the defendant. Nevertheless, the court remanded the case, stating that the district court on reconsideration "will, of course, include the appropriate remedy, back pay, limited or full, etc., as needed to effectuate the Act." Id. at 360. Head v. Timken Roller Bearing Co., 486 F.2d 870, 876–77 (6th Cir. 1973). (Footnote omitted.)

*See also* Thornton v. East Texas Motor Freight, 497 F.2d 416 (6th Cir. 1974).

Other circuits have reached similar results. Thus in the *Georgia Power* case the Fifth Circuit said:

### 2. Equitable Discretion

Title VII was enacted with the legislative objective of disestablishing the racial and sexual caste systems which had remained ingrained in the American economy since slavery and coverture. The Act, in authorizing courts to grant equitable relief to those who might be injured by its breach, expressly and impliedly includes the discretion to award back pay. Given this court's holding that "[a]n inextricable part of the restoration to prior [or lawful] status is the payment of back wages properly owing to the plaintiffs", Harkless v. Sweeny Independent School District, 427 F.2d 319, 324 (5th Cir. 1971), it becomes apparent that this form of relief may not properly be viewed as a mere adjunct of some more basic equity. It is properly viewed as an integral part of the

whole of relief which seeks, not to punish the respondent but to compensate the victim of discrimination. *See* NLRB v. J. H. Rutter-Rex Mfg. Co., 396 U.S. 258, 90 S.Ct. 417, 24 L.Ed.2d 405 (1969); Oil, Chemical and Atomic Workers, Inc. (sic) Union v. N.L.R.B., Part III, 144 U.S.App.D.C. 167, 445 F.2d 237 (1971). *Cf.* Social Security Board v. Nierotko, 327 U.S. 358, 66 S.Ct. 637, 90 L.Ed. 718 (1946).[19]

19. The relief provisions of Title VII were derived from a similar provision in the National Labor Relations Act, 29 U.S.C.A. § 160(c). Monetary awards by the National Labor Relations Board under this authority have been based upon net back pay, and legislative history indicates that Congress felt that the Title VII remedy should be similar. 110 Cong.Rec. 6549 (1964); Developments—Title VII, [84 Harv.L.Rev. 1109] *supra* note 8, at 1259 n. 349.

United States v. Georgia Power Co., 474 F.2d 906, 921 (5th Cir. 1974).

And the Fourth and Seventh Circuits have given an even broader reading to Title VII back pay entitlement in Moody v. Albemarle Paper Co., 474 F.2d 137 (4th Cir. 1973), cert. granted, 419 U.S. 1068, 95 S.Ct. 654, 42 L.Ed.2d 664 (1974) (No. 74–389); Bowe v. Colgate-Palmolive Co., 416 F.2d 711 (7th Cir. 1969).

In the *Pettway* case Judge Tuttle examined the practical problems of awarding back pay in another race discrimination case involving promotion rights in language which we commend to the attention of the District Judge on remand of our instant case:

3. *Determination of the award.* Having decided that the district court should grant back pay to the members of the class, a multitude of questions arise concerning the period of time encompassed by the back pay, the burden of proof, and the mechanics of computation. Some guidelines for the district court will be set forth.

Initially, we approve the district court's intention of referring the back pay claims to a Special Master, Fed.R. Civ.P. 53. United States v. Wood, Wire & Metal Lathers Int. Union, Local 46, 328 F.Supp. 429, 441 (S.D.N.Y.1971). However, the court and the parties may also consider negotiating an agreement. *E. g.,* Johnson v. Goodyear Tire & Rubber Co., 349 F.Supp. 3, 18 (S.D.Tex.1972), 491 F.2d 1364 (5th Cir. 1974); United States v. Wood, Wire & Metal Lathers, Int. Union, Local 46, *supra,* 328 F.Supp. at 444 n. 3. An alternative is to utilize the expertise of the intervening Equal Employment Opportunity Commission to supervise settlement negotiations or to aid in determining the amount of the award.

\*   \*   \*   \*   \*   \*

This Court has recently addressed the issue of the burden of proof on back pay claims in Johnson v. Goodyear Tire & Rubber Co., *supra,* 491 F.2d 1364. This Court pointed out that once a prima facie case of discrimination against the ⸱class alleged is made out, a presumption for back pay arises in favor of class members. However, this presumption was found to be tempered by an initial burden on the individual employee to bring himself within the class and to describe the harmful effect of the discrimination on his individual employment position:

"Therefore, the class represented by Johnson, having established a prima facie case of employment discrimination, is presumptively entitled to back pay . . .. Since, at the same time, the initial burden is now placed on the individual labor department employee to show that he is a member of the recognized class subject to employment discrimination, we think it is appropriate to offer some preliminary observations concerning the manner in which the presumption in favor of the class and the initial burden placed upon an individual employee may be reconciled by the district court.

\*   \*   \*   \*   \*   \*

"The district court's task will be further complicated since the only

criteria which Goodyear previously imposed for transfer have been found by this court to be invalid under Title VII. If an employee can show that he was hired into the labor department before April 22, 1971 and was subsequently frozen into that department because of the discriminatory employment practices established here, then we think the individual discriminatee has met his initial burden of proof unless there are apparent countervailing factors present." *Id.* at 1379.

This holding is entirely consistent with, and flows from our decision in *Georgia Power* that the presumption in favor of a member of a class discriminated against does not *per se* entitle an employee to back pay without some individual clarification. 474 F.2d at 921–922.

This Court in *Goodyear* then went on to detail the burden on the employer:

"  .   .   .  It will be incumbent upon Goodyear to show by convincing evidence that other factors would have prevented his transfer regardless of the discriminatory employment practices. If Goodyear wishes to show that a labor department employee would not be qualified for any other job then its proof must be clear and convincing. Any doubts in proof should be resolved in favor of the discriminatee giving full and adequate consideration to applicable equitable principles." *Id.* at 1379, 1380.

There, just as in this case, our prior decision in Cooper v. Allen, *supra*, 467 F.2d at 840, was instructive. In *Cooper*, the district court had placed the burden on the plaintiff to show, disregarding the discriminatory testing, that he was the most qualified for the job for which he was seeking back pay. This Court reversed:

"On remand the City must prove by clear and convincing evidence that, in the light of the enumerated qualifications, Cooper would not have been entitled to the job even had there been no requirement to take and pass the Otis test. That is, the City must show that the person actually hired was on the whole better qualified for the job." *Id.* at 840.

Reading these earlier decisions together, it is clear that the burden of proof formulated by this Court conceives an initial lighter burden on the back pay claimant with a heavier weight of rebuttal on the employer. Therefore, the *maximum* burden that could be placed on the individual claimant in this case is to require a statement of his current position and pay rate, the jobs he was denied because of discrimination and their pay rates, a record of his employment history with the company and other evidence that qualified or would have qualified him for the denied positions, and an estimation of the amount of requested back pay. The employer's records, as well as the employer's aid, would be made available to the plaintiffs for this purpose. The burden then shifts to the company to challenge particular class members' entitlement to back pay. Pettway v. American Cast Iron Pipe Co., 494 F.2d 211, 258–60 (5th Cir. 1974). (Footnotes omitted.)

Judge Tuttle continued then to discuss the complexity of a back pay award in a discrimination case involving denial of promotions. He then turned to the ingredients of back pay and his conclusion:

Finally, the ingredients of back pay should include more than "straight salary." Interest, overtime, shift differentials, and fringe benefits such as vacation and sick pay are among the items which should be included in back pay. Adjustment to the pension plan *for members of the class who retired during this time should also be considered on remand.*

*Conclusion*

The declaratory and affirmative injunctive relief should alleviate the perpetuated effects of the company's intentional discrimination and testing

and educational requirements. Back pay should compensate for economic losses suffered during the period of testing and before the implementation of this decision. Nevertheless, two additional elements of relief are necessary. The district court should establish a complaint procedure by which a member of the class may question the interpretation or implementation of the district court's decree. *See* United States v. Georgia Power, *supra*, C.A. Nos. 12355, 11723, 12185. The procedure should include the filing of a complaint with the personnel department of the company and the proper committee of the Board of Operatives (described *infra*). Finally, the district court should retain this case on the docket for a reasonable time to insure the continued implementation of equal employment opportunities. Brown v. Gaston County Dyeing Machine Co., *supra*, 457 F.2d at 1383; Parham v. Southwestern Bell Telephone Co., *supra*, 433 F.2d at 429. Pettway v. American Cast Iron Pipe Co., *supra*, 494 F.2d at 263–264. (Footnotes omitted.)

Additionally, we note that two circuits have already entered orders requiring affirmative action to make whole parties who have been discriminatorily refused employment at the hiring office. In a very recent case the Fifth Circuit said:

> The remedies authorized in Title VII specifically include back pay. As indicated above, the purpose of Title VII is to make the discriminatee whole and eliminate the effects of past discrimination as far as possible. Where the discriminatee has suffered economic injury in the form of lost wages, back pay is normally appropriate relief. Harkless v. Sweeny Independent School District, 5th Cir. 1970, 427 F.2d 319, 324. Franks v. Bowman Transportation Co., 495 F.2d 398, 421 (5th Cir.), cert. denied, 419 U.S. 1050, 95 S.Ct. 625, 42 L.Ed.2d 644 (1974).

*See also*, Moody v. Albemarle Paper Co., 474 F.2d 134 (4th Cir. 1973), cert. granted, 419 U.S. 1068, 95 S.Ct. 654, 42 L.Ed.2d 664 (1974).

As we have already indicated, we believe that the District Judge erred in holding that he was without authority to enter back pay awards to the discriminatees before him. In addition to the injustice to the victims of illegal discrimination, such a policy prohibiting back pay because of the difficulty of computing it actually would encourage employers who had the inclination to disregard this act to do so with impunity, knowing that in the end the worst that could happen to them is that they might be ordered to hire women wholly prospectively. We recognize the practical difficulties of determining that actual damage has occurred. The initial burden of proof rests upon the job claimant to establish that she sought employment and that she was eligible for a then-existing job. She can, of course, take advantage of Ford employment records in establishing a prima facie case. At this point the burden would then shift to Ford to show a legitimate business reason for the job refusal. Griggs v. Duke Power Co., 401 U.S. 424, 91 S.Ct. 849, 28 L.Ed.2d 158 (1971).

Assuming that eligibility for back pay was ascertained within the realm of reasonable probability (and no more can be asked here), evidence would also have to be taken pertaining to mitigating of damages because some of these claimants may have secured work in the meantime.

Reference of these back pay claims to a Special Master and pretrial conferences before him to narrow the fact disputes which need actual testimony are practical answers to some of the problems presented by claims for back pay awards.

If eligibility and discriminatory refusal are established, then back pay should be fully awarded, including compensation for fringe benefits then enjoyed by employees. *See* Pettway v. American Cast Iron Pipe Co., 494 F.2d 211, 263 (5th Cir. 1974).

## SENIORITY

Whatever the difficulties of determining back pay awards, the award of retro-

active job seniority offers still greater problems. Seniority is a system of job security calling for reduction of work forces in periods of low production by layoff first of those employees with the most recent dates of hire. It is justified among workers by the concept that the older workers in point of service have earned their retention of jobs by the length of prior services for the particular employer. From the employer's point of view, it is justified by the fact that it means retention of the most experienced and presumably most skilled of the work force. Obviously, the grant of fully retroactive seniority would collide with both of these principles.

In addition, where the burden of retroactive pay falls upon the party which violated the law, the burden of retroactive seniority for determination of layoff would fall directly upon other workers who have themselves had no hand in the wrongdoing found by the District Court.

There is, however, no prohibition to be found in the statute we construe in this case which prohibits retroactive seniority and, of course, the remedy for the wrong of discriminatory refusal to hire lies in the first instance with the District Judge. For his guidance on this issue we observe, however, that a grant of retroactive seniority would not depend solely upon the existence of a record sufficient to justify back pay under the standards of the Back Pay Section of this opinion. The court would, in dealing with job seniority, need also to consider the interests of the workers · who might be displaced as well as the interests of the employer in retaining an experienced work force. We do not assume, as our brethren in the Fifth Circuit appear to (Local 189, AFL–CIO, CLC v. United States, 416 F.2d 980, cert. denied, 397 U.S. 919, 90 S.Ct. 926, 25 L.Ed.2d 100 (1970)), that such reconciliation is impossible, but as is obvious, we certainly do foresee genuine difficulties. *See also* Jurinko v. Edwin L. Wiegand Co., 477 F.2d 1038 (3d Cir.), vacated, 414 U.S. 970, 94 S.Ct. 293, 38 L.Ed.2d 214 (1973), reinstated, 497 F.2d 403, (3d Cir.

1974). *Cf.* Local 189, *supra*; Franks v. Bowman Transportation Co., 495 F.2d 398 (5th Cir.), cert. denied, 43 U.S.L.W. 3330, 419 U.S. 1050, 95 S.Ct. 625, 42 L.Ed.2d 644 (1974) (No. 74–424).

On remand the District Judge may desire to hear the policy questions involved in this problem before remanding the individual claims to the Master. For purposes of that hearing notice should be given to the employees likely to be affected and intervention should be allowed from appropriate representatives.

What we have said concerning job seniority does not, of course, apply to the fringe benefits of employment. Where vacation schedules or pension rights (or other fringe benefits) are determined by date of hire, we perceive no reason why that date in these cases should be other than the date which the trial court fixes as the date when the employee would have been hired, absent the illegal hiring practice which the District Court has identified and enjoined.

### THE CLASS

We affirm the determination of the class as set forth in the District Judge's opinion and order, except that membership therein should also be allowed to applicants between April 1, 1971, and January 26, 1973, when the 150 lb. rule was enjoined. We find no abuse of discretion in the District Judge's refusal to accept an amendment to this complaint so as to add to the problems of these plaintiffs and this plant (the Kentucky Truck Plant) the problems of applicants for employment at the Grade Lane Auto Assembly Plant. No present plaintiff applied for or was refused employment at the Grade Lane plant, and we *do not* perceive that reversal is mandated in the interests of judicial economy. Hopefully this case will supply applicable precedent if indeed the same practices prevailed at Grade Lane.

### ATTORNEY FEES

We likewise find no abuse of discretion in the District Judge's award of at-

torney fees covering the work performed up to the dates considered by him. The case has, however, required additional legal services thereafter both in the District Court and on appeal which were not dealt with by his judgment. We therefore vacate the fee portion of the judgment and remand this aspect of the appeal for further consideration.

The judgment of the District Court is affirmed as modified above, and the case is remanded to the District Court for further proceedings consistent with this opinion. Costs to appellants.