EQUAL EMPLOYMENT OPPORTUNI-
TY COMMISSION, Plaintiff,

v.

ET & WNC TRANSPORTATION COM-
PANY, International Brotherhood of
Teamsters, Chauffeurs, Warehousemen
and Helpers of America, Local No. 667,
Southern Conference of Teamsters of
America, International Brotherhood of
Teamsters, Chauffeurs, Warehousemen
and Helpers of America, (plus 14 indi-
vidual intervenors), Defendants.

No. C–72–280.

United States District Court,
W. D. Tennessee, W. D.

Jan. 6, 1978.

Quentin H. Vaughan, EEOC, Washington, D. C., for plaintiff.

William F. Kirsch, Jr., Howard R. Paul, Memphis Tenn., G. William Baab, Dallas, Tex., John Paul Jones, James F. Schaeffer, Stephen G. Beem, Memphis, Tenn., for defendants.

## MEMORANDUM OPINION

WELLFORD, District Judge.

This employment discrimination action was filed in 1972 by the EEOC pursuant to 42 U.S.C. § 2000e, *et seq.*

On January 8, 1976, after substantial proceedings, the parties, by consent degree, agreed to certain formulae for use in determining the rightful seniority benefits of those beneficiaries who were agreed to be

entitled to relief. Because the parties were unable to agree on the application and determination of the formula as to seniority of line truck drivers, a reference to the Magistrate was ordered on February 14, 1977. The sole issue remaining was the determination of specific carry-over seniority dates for individual truck drivers found to be entitled to relief. The defendant unions have filed objections to the Magistrate's Report, as well as a motion to modify the Consent Decree pursuant to Fed.R. Civ.P. 60(b)(5) and (6) in view of the Supreme Court's subsequent decisions in *International Bhd. of Teamsters v. United States*, 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977) and *United Airlines v. Evans*, 431 U.S. 553, 97 S.Ct. 1885, 52 L.Ed.2d 571 (1977). There is also before the Court a motion to intervene as defendants and cross-claimants filed as a class by over-the-road drivers whose seniority would be affected by any relief awarded and whose interests are allegedly not represented by the present parties.

The Magistrate based his Report solely on his interpretation of the Consent Decree, even though this would result in granting retroactive seniority dates prior to July 2, 1965, the effective date of Title VII.

The Court has already entered an Order[1] pending resolution of the issues presented which would grant individual beneficiaries retroactive seniority dates, but none have been designated prior to July, 1965. A part of the settlement of this case was the lump sum payment of $95,000.00 by reason of a November 29, 1974, Consent Decree. The Consent Decree of 1976 purported to resolve "all claims for back pay and injunctive relief arising out of the seniority and transfer issues as between the parties to this lawsuit," while at the same time defendants denied that the Decree constituted an admission "of any act unlawful under Title VII." The defendant unions (International, Southern Conference, and Local 667 of the Teamsters) agreed not to "interfere with the relief herein ordered," but rather to "cooperate in the implementation" of the Decree.

Under the Decree in controversy a potential transferee (from the City driver to the more lucrative road or line driver category) was deemed to be "qualified" on the "earliest" of the following dates:

"(a) The date on which he completed two (2) years' experience operating tractor-trailer equipment. Military driving experience shall be considered toward fulfilling this requirement to the extent that such military experience is comparable to civilian experience.

(b) The date on which he graduated from an accredited truck driving school approved by ET & WNC.

(c) The date on which he completed one (1) year of 'extra work' road assignments for ET & WNC.

"In determining the date on which a potential or prior transferee actively desired transfer to a road driver job, the Court shall consider not only formal application for those positions and/or filing of EEOC charges or union grievances, but shall consider inquiry about positions, conversation with co-workers, and such other informal indications of such desire as the potential or prior transferee may present and shall give said information such weight as it deems appropriate."

INTERVENTION:

▆ Those who have sought to intervene are five line truck drivers acting purportedly not only on their own behalf but also on behalf of "all others similarly situated." They filed a motion to intervene October 14, 1977, prior to a hearing set by the Court to hear arguments on objections to the Magistrate's Report and on defendant union's motion to modify the Consent Decree. They have filed a supplemental motion following the hearing, contending, among other things, that they had a right to be heard and their views considered prior to the entry of the Decree in question and with respect to the Magistrate's hearing. Pro-

---

1. See "Preliminary Order" dated August 24, 1977.

spective intervenors assert that Fed.R. Civ.P. 24(a) gives them a right to intervene, having the requisite "interest," and that their rights have been impaired and that they have not previously been represented adequately. The Court is persuaded that prospective intervenors do have interests that could or may be adversely effected. Further, none of the existing parties could necessarily provide them with unequivocal representation of their particular interests in this proceeding.

Plaintiff EEOC is charged with the representation of those claimed to have been excluded, primarily on the basis of race, and plaintiff's aim is to disturb what had been the existing seniority, not only as of July 2, 1965, but before the Act which created the EEOC became effective. The defendant employer's interests are not the same as that of those seeking intervention. Indeed, the latter seek here to be permitted to present proof in support of their contention that they should also be entitled to damages against ET & WNC if retroactive seniority allowance to the 27 black drivers involved (as tentatively established in the Court's August 24, 1977, Order) brings about a reduction in their earnings or earning capacity. Neither do the interests of the union defendants coincide with those of the prospective intervenors; the unions represent all of the Memphis based ET & WNC drivers, not just those in the alleged class of intervenors. The unions, in short, bear the brunt of fair and equal representation of both those who seek to disturb the seniority status quo and those, like the prospective intervenors, who seek to maintain it.

Intervention, however, to be proper under Fed.R.Civ.P. 24(a) must be *timely*. In considering this question, the Court has considered the memoranda and affidavits of the parties and prospective intervenors. Is a proposed intervention filed some five years after institution of an action justifiable and timely under the circumstances? Notice of the opportunity to transfer from road driver to line driver was posted January 6, 1975, and again later in 1975 notice was posted at ET & WNC that the monetary award would be distributed to those

who assertedly had been damaged by the previous "no transfer" policy, and that the EEOC was involved. During this same period this Court was involved in the disposition of several other similar types of suits which involved individuals and class action claims of this same type against truckers similarly situated with ET & WNC. See, for example, *Thornton v. E. Texas Motor Freight*, 497 F.2d 416 (6th Cir. 1974); *Cox v. Gordon's Transports, et al.*, No. C–69–148 (W.D.Tenn.); and *Wiggins v. Spector Freight System*, No. C–74–163 (W.D.Tenn.). In each of these cases, the same union defendants and local union officers were involved. The unions themselves agreed to an adjustment in the seniority board or list in the process of negotiations in the good faith course of trying to arrive at a resolution to this controversy. Compare *Bowe v. Colgate Palmolive Co.*, 416 F.2d 711 (7th Cir. 1969) and *Humphrey v. Moore*, 375 U.S. 335, 84 S.Ct. 363, 11 L.Ed.2d 370 (1964) with respect to union representation and right to correct injustices done to a substantial minority of its members.

There is no question but that the delay involved here is lengthy and would involve prejudice to the defendant employer if intervenors were permitted to file claims against ET & WNC. See Moore's *Federal Practice*, § 24.13(1); *Nevilles v. EEOC*, 511 F.2d 303 (8th Cir. 1975); *Kirkland v. New York State Dept. of Correctional Services*, 520 F.2d 420 (2nd Cir. 1975); *Stallworth v. Monsanto Co.*, 13 F.E.P. Cases 832 (N.D.Fla. 1975), *aff'd.*, 558 F.2d 257 (5th Cir. 1977).

The first notice posted by ET & WNC with respect to these matters, January 6, 1975, specified, in part:

"When seniority rights are determined for city drivers who want to transfer to the road, you will be told what those seniority rights are . . . the EEOC is presently negotiating with the Teamsters concerning those seniority rights."

No doubt there was discussion among Teamsters officers and drivers about "rightful place" seniority determinations as effectuated in *Franks v. Bowman Transpor-*

*tation Co.*, 424 U.S. 747, 96 S.Ct. 1251, 47 L.Ed.2d 444 (1976) and *Thornton v. E. Tex. Mtr. Freight, supra* (No. C–69–357, W.D. Tenn., Order December 27, 1972). Thus, although individual petitioning line driver intervenors may not have known precisely the impact upon them until 1977, they doubtless were aware, or should have been aware long before October 1977 that their rights were affected by the proceedings in this Court.

The petition for intervention is denied for want of timeliness insofar as it attempts to assert in this case a claim for damages against the employer (and/or the union).[2] Petitioners are correct, however, in asserting that their interests are affected and that *Meadows v. Ford Motor Co.*, 510 F.2d 939 (6th Cir. 1975) suggests the difficulty inherent in an award of retroactive job seniority, and that other workers who are displaced in seniority status may feel the burden. It should be noted, however, that some of the potential intervenors may never have attained their particular position of seniority, with all its attendant benefits, had not qualified blacks been excluded from the opportunity of bidding for line or road driver positions. The parties and the Court, in fact, have considered the serious policy questions involved in light of *Franks v. Bowman, supra,* and *Thornton v. E. Tex. Mtr. Freight, supra,* which recognized, prior to 1977, in this type of situation a "rightful place" adjustment to seniority in the City driver, line driver rosters. See *United States v. Allegheny-Ludlum Industries,* 553 F.2d 451 (5th Cir. 1977); 517 F.2d 826 (1975), *cert. den.* sub nom. *Harris v. Allegheny-Ludlum,* 425 U.S. 944, 96 S.Ct. 1684, 48 L.Ed.2d 187 (1976).

2. Insofar as individual line drivers seek to intervene not only to contest retroactive seniority but also to assert affirmative claims, their inference being that relief afforded discriminatees in this case would only penalize them, it should be remembered that the employer has already paid $95,000, plus considerable expenses and legal costs, in contesting this matter, and that discriminatees are only to be

## MODIFICATION OF CONSENT DECREE:

At the time the Decree, bearing on particulars as to determination of seniority, was entered in January, 1976, there had been a decision of the Court of Appeals, entered August, 1975, *United States v. TIME–DC and Teamsters,* 517 F.2d 299 (5th Cir. 1975), involving substantially identical issues. That court had awarded pre-Act seniority and the case was then on appeal to the Supreme Court. *Franks v. Bowman, supra,* had not yet been decided in the same Circuit involving similar issues, 495 F.2d 398 (5th Cir. 1974), subject to pending appeal. There was considerable discussion in *Franks* about affirmative relief and retroactive seniority in the Circuit Court's opinion ordering more relief than the District Judge had concluded.

It was not until the Supreme Court's pronouncement in *United States v. TIME–DC and Teamsters,* 431 U.S. 324, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977) that it became clear that retroactive "rightful place" seniority for transferring drivers to line driver positions was limited to the effective date of Title VII (July 2, 1965). The Court held: "Congress did not intend to make it illegal for employees with vested seniority rights to continue to exercise those rights, even at the expense of pre-Act discriminatees." 431 U.S. at 354, 97 S.Ct. at 1864. It should be also noted that none of the several like cases decided in this Court, including *Thornton v. E. Tex. Mtr. Freight, supra,* affirmed by the Sixth Circuit Court of Appeals, extended affirmative relief as to retroactive seniority prior to July 2, 1965, and this was the status of persons occupying positions similar to those seeking such relief in this case by virtue of the January 1976 Consent Decree.[3] Post consent decree awarded a rightful place, not some sort of "super" seniority to their detriment.

3. The EEOC argues in its memorandum brief in opposition to modification of the Decree that *Thornton, supra,* was limited or rejected by *EEOC v. Detroit Edison,* 515 F.2d 301 (6th Cir. 1975). The latter decision, however, was vacated and remanded in light of *Teamsters, su-*

modification (or intervention to consider modification) is rare and should be permitted only under compelling equitable circumstances. *United States v. Allegheny-Ludlum Industries, supra; Stallworth v. Monsanto Co., supra*; see *EEOC v. United States Steel*, No. CA–70–906–S (N.D.Ala. October 11, 1977).

In this instance, however, there was no specific opportunity for the Court (or the parties) to consider the specific position taken by the prospective intervenors who are adversely effected insofar as pre-July 1965 seniority has been consented to. The law at the time was unclear; a 1974 case (*Franks v. Bowman, supra*) dealing with "rightful place" affirmative seniority relief was in doubt and had been pending for a year on appeal; *United States v. TIME–DC and Teamsters, supra*, (5th Cir. 1975), indicated pre-Act retroactive seniority was lawful under a contractual arrangement similar to that in effect in this case. These two cases cited a number of other pre-1976 decisions indicating "rightful place" seniority was the proper approach. The consent arrangement was clearly based on the law as it appeared to be at that time, although it may be argued that every such compromise settlement is based upon the parties' notion of the law at the time entered.

The EEOC argues that *Teamsters, supra*, does not necessarily apply to the situation in this case and that it did not "create a change in the law." This Court, however feels that *Teamsters* involved a parallel and precisely analagous situation and that the seniority systems involved at TIME–DC and ET & WNC are alike. There is no escape from a conclusion that six of the twenty-seven discriminatees here would receive an earlier seniority position if the Decree were now enforced in accordance with its original tenor, a position which other drivers in similar circumstances have been precluded from receiving.[4] Since only these six discriminatees would be materially

adversely affected by a modification, if permitted, it is hard to follow EEOC's argument that such a result would necessitate a reconsideration of all the issues involved because these persons may have waived back pay claims against the union "and other possible benefits." (See EEOC's September 6, 1977, memorandum in opposition, p. 3).

The Court is persuaded that during the pendency of proceedings in this tribunal to interpret and determine the meaning and applicability of the Consent Decree as to retroactive seniority dates for specified individuals, the meaning of the law involved for the first time became finally clarified and the prior decision of the appellate court reversed, to preclude in this type of proceeding against such defendants as are before the Court, the establishment of such a seniority date prior to July 2, 1965, where other vested seniority rights are concerned. Had this Court, before the motion to modify, entered a final order defining and interpreting the applicability of the Consent Decree as to seniority for the specific individuals involved, it may be that the result reached would have been different. See *United States v. Allegheny-Ludlum Industries, supra*. The matter was actively pending in the Court, and there are sufficient equitable considerations for the Court to treat the Consent Decree as having been partially modified by the effect of and limitations set out in *Teamsters, supra*.

■ In summary, the Court holds that while this Court was in the process of finally determining the seniority rights of discriminatees (recognizing that the prospective intervenors were not represented in these proceedings in opposition to the positions taken by the parties,) a Supreme Court decision was rendered which for the first time clarified the earliest effective date seniority might take effect, and that this should bring about a modification of

---

*pra*, by the Supreme Court, 431 U.S. 951, 97 S.Ct. 2669, 53 L.Ed.2d 267 (1977).

**4.** E. B. Brown (7/64); J. P. Brown (7/54); W. Brown (5/49); A. Miller (5/52); R. J. Seay

(2/64) and J. B. Scott (2/62). Excluded from this count are five others seeking June 23, 1965, seniority—only a week before the earliest allowable date under the *Teamsters* rationale.

the Consent Decree in conformity therewith. This is a sufficient equitable consideration, despite a prior agreement for an earlier "rightful place" date of seniority, to bring about an amendment to the prior Consent Decree, but only to this limited extent.

Accordingly, defendant unions' motion to modify is granted, and its objections to the Magistrate's Report are sustained insofar as the earliest seniority date to be specified will be July 2, 1965. There has been established under Fed.R.Civ.P. 60(b) a sufficient reason justifying this relief. It is no longer equitable in light of *Teamsters, supra,* that an earlier date be set.

CONCLUSIONS:

1. The motion to intervene should be denied for the reasons stated.

2. Defendants' motion to modify is granted, but only to the extent of fixing the earliest date for retroactive seniority to be July 2, 1965.

3. The Preliminary Order on the Report of the Magistrate with respect to seniority relief (dated August 24, 1977) is ratified and affirmed.

4. Upon appropriate application by plaintiff, the Court will consider whether the six discriminatees referred to in footnote 4 (page 376 herein) who were reported by the Magistrate to be entitled to a seniority date prior to July 2, 1965, are entitled to a further hearing or consideration for other relief in light of the modification permitted. All of the persons granted seniority as of July 2, 1965, will be entitled to priority over any other line driver having that particular seniority date under the circumstances.