Rodney J. COMPSTON, Plaintiff,

v.

BORDEN, INC., et al., Defendants.

Civ. A. No. C-2-74-417.

United States District Court,
S. D. Ohio, E. D.

March 29, 1976.

158

A. Mark Segretti, Jr., Columbus, Ohio, for plaintiff.

Thomas M. Taggart, Columbus, Ohio, for defendants.

## OPINION AND ORDER

DUNCAN, District Judge.

This is a civil rights action brought pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* Jurisdiction of this Court is invoked pursuant to 42 U.S.C. § 2000e–5(f)(3) and 28 U.S.C. § 1343(4). The case came on for trial to the Court without a jury. The Court's findings of fact and conclusions of law are set forth hereinbelow, in accordance with Rule 52(a), Fed.R.Civ.P.

From October, 1972, until October, 1974, plaintiff Rodney J. Compston was employed as a millwright in the maintenance department of the Columbus, Ohio, plant of defendant Columbus Coated Fabrics Division of Borden, Inc. Both Borden, Inc. and its Columbus Coated Fabrics Division are engaged in an industry affecting commerce and had twenty-five or more employees during the period October, 1972, through October, 1974. Both are therefore employers under the statutory definition, 42 U.S.C. § 2000e(b). Defendant Ed Evans is a supervisor of the maintenance department of Columbus Coated Fabrics, and was such while plaintiff was employed there. As an agent of Borden, Inc. and Columbus Coated Fabrics, Evans is also an employer under the statutory definition. See 42 U.S.C. § 2000e(b); *Hutchison v. Lake Oswego School District,* 374 F.Supp. 1056, 1059 (D.Or.1974), *aff'd in relevant part,* 519 F.2d 961 (9th Cir. 1975); *Doski v. M. Goldseker Co.,* 9 EPD ¶ 10,135 at 7609 (D.Md.1975).

Evidence adduced at trial and at the hearing on plaintiff's application for preliminary injunctive relief, see Rule 65(a)(2), establishes by a clear preponderance the fact that defendant Evans, while acting as plaintiff's supervisor, directed a barrage of verbal abuse towards Mr. Compston because Compston claimed to be of Jewish ancestry and faith. While Compston was in his probationary period with Columbus Coated Fabrics, and before Evans was aware of his claim to be Jewish, he and Evans got along famously. Evans found plaintiff's work repairing machines as a millwright to be quite satisfactory, if not superior. Thereafter, when Compston casually mentioned in the shop that he believed in the basic tenets of Judaism, Evans' attitude changed. He began to refer to Compston, in the presence of his fellow workers, as "the Jew-boy," "the kike," "the Christ-killer," "the damn Jew," and "the goddamn Jew." Evans' attitude toward plaintiff's work changed as well. Millwright James E. White, who was paired to work with Compston for a time, testified as follows:

Q. And have you worked with—you have a partner; is that it?

A. Generally, yes.

Q. Have you had different partners?

A. Different partners, yes.

Q. Now, was Rodney Compston your partner at one time?

A. Yes, he was.

Q. Prior to that, were you ever written up?

A. No. The only times I've ever been written up was twice, and that was with Rodney, when I worked with him on dayshift.

Q. Now, do you know Ed Evans?

A. Yes.

Q. And during this three years, what was your relationship with Ed Evans?

A. Well, when I first hired in there, I mean, Ed and me was real good friends. I loaned him a chainsaw and he loaned me his car when I was having troubles, and he wasn't only my foreman, I'd say he was my friend.

Q. You say that was when you first started?

A. That's right.

Q. Did that situation change?

A. Yes, it did. When I started working with Rodney, he seemed like he was on us all the time, harassing us and finally, he—like I say, we got broke up.

\* \* \* \* \* \*

So, it was during this time, as I say, that me and Ed's relationship had been friendly, real friendly. So, at this time, this constant harassment and just being on us all the time, I asked him what he was doing.

And he—at that time, he said, "Well, now, White, don't take this personal. You're kind of in between," or something to that effect. I won't say it's exactly that, but, "You're something in between."

And I—I said, "You're making my working conditions a hell. You're affecting my family's livelihood. That's about as personal as you can get." And that's mainly what happened.

He said—well, then, as we went in the office, me and Rod and him was in there, no one else was in there, he told Rod, "If you'd keep your Goddamn Jew mouth shut," he said, "you wouldn't be in this problem."

And he told me, "If you'd keep your mouth shut about everything, you wouldn't be in here."

And I asked him at that time, "Well, are you supposed to just let us do whatever you want and treat a person the way you want to?"

That's what happened that particular time.

Q. Now, was the—your working conditions changed, then? How did they change?

A. Oh, yeah. Yeah, it was like working under a microscope.

\* \* \* \* \* \*

So, that's what I say, you were afraid—I was afraid to do anything too much unless I checked with him, and then get a smart answer, and if I didn't get it, there was just no escape. That's the way we were harassed.

Q. Are you working with Rodney now?

A. No.

Q. Do you have another partner?

A. Yes.

Q. Is there a difference in working conditions?

A. Yes.

Q. And what is that?

A. Well, you don't have to look over your shoulder. Everything you do, you don't have to wonder if you're going to get wrote up for it.

\* \* \* \* \* \*

Q. Did Evans ever call Mr. Compston any names?

A. Yeah. Well, when he was on probation, it was, "Rod, Rod." And then, when Rod wasn't there, anytime he referred to him, he referred to him as "the Jew," or "the Goddamn Jew."

Q. And you hear that on several occasions, you say?

A. Several occasions, anytime he referred to him.

Transcript of October 31, 1974, hearing at 116–117, 119–20, 122, and 126. Mr. White's testimony was corroborated at trial by that of Mr. John C. Farley, another millwright, and by plaintiff's own testimony.

Plaintiff was discharged from his employment with Columbus Coated Fabrics on October 22, 1974. Plaintiff amended his complaint to allege that the discharge was "due to Plaintiff being Jewish and having exercised his federal rights." Evidence was heard concerning these allegations at the hearing on plaintiff's motion for preliminary injunctive relief. In a Memorandum and Order filed on November 12, 1974, the Court denied plaintiff's request that defendants be ordered to reinstate him pending a trial on the merits. The Court found at that time that "plaintiff failed at the hearing to overcome the defendant company's evidence to the effect that he was discharged for failure to comply with reporting-off rules." The Court stated,

I find, therefore, that plaintiff's discharge on the 22nd was for cause and not, as plaintiff claims, in retaliation for his having filed charges of discrimination against the defendant company. The evidence presented at the hearing leads me to conclude that the circumstances concerning the discharge were in no substantial way different from other Article III, Section 12 terminations ordered as a matter of course by Columbus Coated Fabrics.

Plaintiff's discharge having resulted from his own failure to follow the established reporting-off rules of defendant company, and not from any unlawful act of the company, the application for preliminary injunction must be denied.

■ Any finding of fact made concerning a motion for interlocutory relief is, of course, subject to modification after the trial on the merits. But at trial plaintiff's evidence concerned his treatment while employed at Columbus Coated Fabrics, not the circumstances of his dismissal. There is no more basis at this time for a finding that plaintiff's discharge was retaliatory or otherwise unlawful, than there was at the time the Court entered its November 12, 1974 Memorandum and Order. The court accordingly finds that plaintiff has not met his burden in his attempt to show that his discharge was violative of Title VII.

Counts 4, 5 and 6 of the first claim of the amended complaint, alleging that defendants defamed plaintiff and unlawfully denied him (1) credit from the employee's credit union, (2) a workman's compensation award, and (3) company hospital benefits, were dismissed by agreement of the parties on February 2, 1976. Plaintiff's pendent state claim that Evans assaulted him with a revolver was dismissed at trial because of insufficient proof. Plaintiff's allegations at paragraphs 8, 11, 15 and 16 of the amended complaint, that he was denied advancement and overtime by defendants, is without evidentiary support. In short, although the record supports a finding, and the Court so holds, that Ed Evans harassed plaintiff by using numerous derogatory epithets and by engaging in a patterned course of conduct designed to make his working environment a miserable one, the evidence does not support a finding that Compston suffered any diminution of wages as a result of Evans' unlawful acts. Compensatory and punitive damages are, of course, unavailable to a Title VII plaintiff in this circuit after the landmark decision, *Equal Employment Opportunity Commission v. Detroit Edison Co.*, 515 F.2d 301, 308–309 (6th Cir. 1975).

■ The limitations which exist concerning the kinds of relief available in a Title VII case do not affect the question of whether a violation of the Act has in fact occurred. It may be true, as Judge Rubin recently held in *Howard v. National Cash Register Co.*, 388 F.Supp. 603, 606 (S.D.Ohio 1975), that verbal abuse from fellow employees does not necessarily give rise to a Title VII claim against the employer. As Judge Knox stated in *Ostapowicz v. Johnson Bronze Company*, 369 F.Supp. 522, 537 (W.D.Pa.1973):

It is true that the defendant is not necessarily responsible for actions of all its employees in expressing or actively carrying out feelings of hostility towards women, but the defendant is responsible for acts of supervisory personnel. *Fekete v. United States Steel Corporation* [353 F.Supp. 1177 (W.D.Pa.1973)].

See also *Newman v. Avco Corp.*, 7 EPD ¶ 9117 at 6687 (M.D.Tenn.1973). To the extent that *Corne v. Bausch and Lomb, Inc.*, 390 F.Supp. 161 (D.Ariz.1975) holds that a supervisor and his company are not liable under Title VII for patterned and discriminatory harassment and verbal abuse of employees by the supervisor, this Court declines to follow it. Title VII has from its enactment proscribed discrimination "against any individual with respect to his . . . conditions . . . of employment, because of such individual's . . . religion . . . or national origin." 42 U.S.C. § 2000e–2(a)(1). When a person vested with managerial responsibilities embarks upon a course of conduct calculated to demean an employee before his fellows because of the employee's professed reli-

gious views, such activity will necessarily have the effect of altering the conditions of his employment.

At trial and at the hearing on plaintiff's request for preliminary injunctive relief, defendants strenuously disputed plaintiff's threshold contention that he is of Jewish ancestry and faith. At trial, Compston testified that when he was a young child his maternal grandmother informed him that his paternal grandmother was Jewish. He further testified that he is not now, nor has he ever been, a practicing member of the Jewish faith. His grasp of the fundamental tenets of Judaism is a rather poor one.

The statute provides that the term religion "includes all aspects of religious observance and practice, as well as belief . . . ." 42 U.S.C. § 2000e(j). Contrary to defendants' assertions at trial, there is no basis on this record for a finding that plaintiff's alleged religious beliefs are a facade erected by him as a defense to charges that his work was unsatisfactory. The evidence points in precisely the opposite direction; it is apparent that Evans considered plaintiff's performance to be satisfactory until he learned that Compston purported to be Jewish.

In *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802, 93 S.Ct. 1817, 1824, 36 L.Ed.2d 668 (1973) (footnote omitted), the Supreme Court made the following observations in the context of a charge of racial discrimination in hiring:

> The complainant in a Title VII trial must carry the initial burden under the statute of establishing a prima facie case of racial discrimination. This may be done by showing (i) that he belongs to a racial minority; (ii) that he applied for and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, his position remained open and the employer continued to seek applicants from persons of complainant's qualifications.

In a footnote, 411 U.S. at 802 n.13, 93 S.Ct. at 1824, the Court went on:

> The facts necessarily will vary in Title VII cases, and the specification above of the prima facie proof required from respondent is not necessarily applicable in every respect to differing factual situations.

*McDonnell Douglas,* then, sets up the general rule that a Title VII plaintiff must bear the burden, inter alia, of showing that he belongs to a racial or religious minority. By a footnote, the Supreme Court made it clear that this element of a plaintiff's case "is not necessarily applicable in every respect to differing factual situations." In the present case, Mr. Evans, a supervisor at Columbus Coated Fabrics, clearly acknowledged by his words and deeds his acceptance of Mr. Compston's claim that he was Jewish. This, coupled with Compston's testimony at trial as to his religious beliefs, and in the absence of probative evidence tending to show that Compston fabricated his claim in response to charges that his work was unsatisfactory, is enough in my judgment to shift to defendants the burden of showing that plaintiff is not in fact Jewish. This burden defendants did not meet at trial.

The Court finds and concludes, then, that defendants discriminated against plaintiff concerning the conditions of his employment because of his religion and national ancestry, in violation of the command of Title VII of the Civil Rights Act of 1964, as amended.

But, as has been stated hereinabove, Mr. Compston's discharge from defendant's employ was not motivated by plaintiff's religion or national ancestry. It follows that Mr. Compston is not entitled to reinstatement or to any award of back pay from the date of his discharge. See 42 U.S.C. § 2000e–5(g):

> No order of the court shall require . . the . . . reinstatement . . . of an individual as an employee, or the payment to him of any back pay, if such individual . . . was . . . discharged for any reason other than discrimination on account of race, color, reli-

gion, sex, or national origin or in violation of section 2000e–3(a) of this title. See also *King v. Laborers International Union of North America, Union Local No. 818,* 443 F.2d 273, 278–79 (6th Cir. 1971). Furthermore, since Compston is no longer employed by defendants, and since this suit was not brought as a class action, the Court finds no justification on this record for entry of any form of injunctive relief. See *O'Shea v. Littleton,* 414 U.S. 488, 495–96, 94 S.Ct. 669, 676, 38 L.Ed.2d 674 (1974): "Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects." The rule is no different with regard to declaratory relief, see *Golden v. Zwickler,* 394 U.S. 103, 108, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969); *Williams v. General Foods Corporation,* 492 F.2d 399, 406 (7th Cir. 1974); 6A Moore's Federal Practice ¶ 57.13 (1974).

Where a Title VII plaintiff has proved the necessary elements of his claim, a judgment in his favor is not precluded by the fact that intervening events, and the strictures upon the kinds of relief available under the Act, prevent compensatory or injunctive relief. The public policy which underlies this statute is served in part when an employer is found to have engaged in unlawful employment practices, whether or not the employer is liable for a back pay award or subject to an equitable decree. The general rule in civil actions is that "even if the injunctive and declaratory relief sought is moot, the courts retain jurisdiction to decide upon the appropriateness of awarding damages." *Petersen v. Talisman Sugar Corporation,* 478 F.2d 73, 78 (5th Cir. 1973). Were compensatory damages available to a Title VII plaintiff, this Court would not hesitate to enter such an award in this case, because it is apparent from the evidence that Compston suffered mental anguish and humiliation at defendants' hands. The decision of the Court of Appeals in *Equal Employment Opportunity Commission v. Detroit Edison Company,* 515 F.2d 301 (6th Cir. 1975) precludes such an award, however, and plaintiff has failed to show by a preponderance of the evidence that he suffered any injury which could properly be remedied by a back pay award.

■ In my opinion, where as here a Title VII plaintiff has proved the essential elements of his claim but back pay and injunctive relief are unavailable to him because of the factual posture in which the case reaches trial, an award of nominal damages, plus where appropriate an award of costs and attorneys fees, should be entered. See, *e. g., Wilson v. Eberle,* 18 F.R.D. 7, 9, 15 Alaska 651 (D.Alaska 1955):

The rule is well established that nominal damages are recoverable where a legal right is to be vindicated against a wrong or invasion of that right which has produced no actual loss or damage; for the law infers some damage from the invasion of that right. Such nominal damages are awarded, not as compensation for the injury, but merely in recognition of the plaintiff's right and of the technical invasion thereof by the defendant. And where there is found any invasion of such right, whether actual damage is caused or not, at least nominal damages should be recovered.

■ The Court concludes, then, that plaintiff is entitled to judgment herein and to an award of fifty dollars as nominal damages. Plaintiff is therefore the "prevailing party" in this lawsuit, see *Bowman v. West Disinfecting Company,* 25 F.R.D. 280, 282–3 (E.D.N.Y.1960). Rule 54(d) provides that "costs shall be allowed as of course to the prevailing party unless the court otherwise directs." Title VII, 42 U.S.C. § 2000e–5(k), provides that "the court, in its discretion, may allow the prevailing party . . . a reasonable attorney's fee as part of the costs." As a general rule, an award of attorneys fees should be proportionate to the extent to which the plaintiff prevails in the lawsuit. *Williams v. General Foods Corporation,* 492 F.2d 399, 409 (7th Cir. 1974); *Muller v. United States Steel Corporation,* 509 F.2d 923, 930 (10th Cir.), *cert. denied,* 423 U.S. 825, 96 S.Ct. 39, 46 L.Ed.2d 41 (1975). Since the Court has

determined that plaintiff is not entitled to the great bulk of the relief he requests in his complaint, I am of the opinion that plaintiff's request for attorneys fees should be limited to an award of five hundred dollars.

For the reasons set forth hereinabove, it is ORDERED that judgment be entered in favor of plaintiff Rodney J. Compston and against defendants Ed Evans and Columbus Coated Fabrics Division of Borden, Inc., and that plaintiff receive from these defendants the sum of fifty dollars ($50.00) as nominal damages, together with his costs in accordance with Rule 54(d), Fed.R.Civ.P. In taxing costs, the Clerk will include an award of five hundred dollars ($500.00) as attorneys fees. It is further ORDERED that plaintiff's requests for back pay, reinstatement, and compensatory and punitive damages be, and they hereby are DENIED.